## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
## SOUTHERN DIVISION

**PEARL SCOTT**                                                    **PLAINTIFF**

**v.**                                            **Civil No. 1:19cv549-HSO-JCG**

**ROUSES ENTERPRISES, LLC**
*doing business as*
**ROUSES MARKETS, and**
**JOHN DOES 1-5**                                                **DEFENDANTS**

## MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT ROUSES ENTERPRISES, LLC'S MOTION [51] FOR SUMMARY JUDGMENT OR ALTERNATIVELY, MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO PUNITIVE DAMAGES

BEFORE THE COURT is the Motion [51] for Summary Judgment or Alternatively, Motion for Partial Summary Judgment as to Punitive Damages filed by Defendant Rouses Enterprises, LLC. This Motion is fully briefed. Having considered Defendant's Motion [51] on its merits, the related pleadings, the record, and relevant legal authority, the Court is of the opinion that the Motion [51] for Summary Judgment should be granted, and that Plaintiff Pearl Scott's claims should be dismissed with prejudice.

## I. BACKGROUND

### A.   Factual background

This dispute arises out of an incident that occurred on December 2, 2017, in which Plaintiff Pearl Scott ("Plaintiff" or "Ms. Scott"), fell over a bag of firewood near the entranceway of Defendant Rouses Enterprises, LLC's d/b/a Rouses

Markets ("Defendant" or "Rouses") grocery store in Ocean Springs, Mississippi.[1] Compl. [1-1] at 3-4.

As Ms. Scott approached the main entranceway on the east side of the building, she observed a "dump bin," which contained bags of firewood, set up outside near the entranceway. Ex. D [51-4] at 3. As Ms. Scott reached the entranceway, she stepped aside to allow two customers with shopping carts to exit the store. *Id.* When Ms. Scott stepped forward to enter, she tripped over a bag of firewood lying on the ground next to the dump bin. *Id.*

Ms. Scott reported the incident to Spencer Parton ("Mr. Parton"), a service clerk, who then escorted her to speak with the assistant manager, Eljan Beeson ("Mr. Beeson"). Mr. Beeson advised Ms. Scott to complete a Customer Claim Report, and he photographed the location of the incident. Ex. [55-5] at 3. Mr. Beeson attempted to locate any witnesses and any surveillance videos of the incident, but was unable to do so. *Id.* He has further stated that no employee had reported either that they had placed the bag of firewood on the ground outside the dump bin or that they had seen the bag of firewood lying on the ground prior to Ms. Scott's fall. Ex. G [51-7] at 6. Ms. Scott reported in the Customer Claim Report that, when she was "coming into [the] store, some bags of wood [were] there on the floor and moved for some ladys [sic] that came by and [she] fell in front of [the] store." Ex. K [55-13] at 1.

---

[1] It is undisputed that the accident occurred on December 2, 2017, at the Rouses Market located at 3164 Bienville Boulevard, Store #40 in Ocean Springs, Mississippi.

During Ms. Scott's Deposition [51-4], the following exchange occurred:

> A. And was headed in the door. And some ladies come out with baskets full of food, and I had to get out of their way. When they come out the door, I stepped aside and -- to let them by. Because people coming and going. It was a busy evening.
>
> Q. Right
>
> A. And when I got ready to walk off again, that wood was on the floor. I don't know whether their buggy knocked it over or what, but my feet got caught in a bag of wood.
>
> Q. Okay. So was it in the actual entryway of the door?
>
> A. Yes.
>
>                                 * * *
>
> Q. And when you were walking up to the door, did you initially see the bags of wood there?
>
> A. Yes.
>
> Q. Okay. Do you know if anybody else fell on any wood that day?
>
> A. No.

Ex. D [51-4] at 2-6. Subsequently, Ms. Scott was driven by a Rouses employee to a local emergency room for medical treatment. Ex. A [55-1] at 24.

Rouses has produced as an Exhibit [55-15] its floor care management policies for its employees, which are stated in a Floor Care Inspection & Verification Program ("Floor Care Program"). *See* Ex. M [55-15] at 1. The Floor Care Program includes the following policy:

> The grocery floor care program begins at opening time and ends at closing time. During this time, floor care is performed in one hour intervals every day. The floor care person should inspect the store on the half hour of every hour depending on customer traffic in the store. The main responsibility of the floor care clerk is to monitor floor care

conditions almost continuously. However, the program is designed so that the floor care person will visually inspect, sweep and/or mop, where necessary, ensuring that all floor areas are free of debris, hazards and spills. The floor care person will then print his/her name on the Floor Cleaning Record . . . sign and document the time that floor care procedure were performed.

*Id*. at 2. The Floor Care Program states that the store manager is responsible for verifying all floor care operations every hour, including inspecting all areas of the floor to certify that floor care operations are performed effectively. *Id.*

With respect to exterior walkways such as the area where Ms. Scott fell, Rouses' Director of Risk Management, Daniel Pritchett ("Mr. Pritchett"), testified that Rouses did not have "written policies or procedures specifically for maintenance, inspection or monitoring of exterior walkways, concrete and common areas." Ex. N [55-16] at 1. Instead, Rouses provided "verbal instruction and on-the-job training to its employees for the maintenance, inspection and monitoring of those areas." *Id.*; *see* Ex. O [55-17] at 1. According to Mr. Pritchett, Rouses' buggy personnel or bag boys were responsible for inspecting and maintaining the external areas, including the floors at its entranceway. Ex. N [55-16] at 1.

Mr. Beeson confirmed that Rouses' bag boys and buggy personnel were responsible for keeping the outdoor areas near the entrance clean of debris and hazards. Ex. G [51-7] at 6. Mr. Parton testified that his responsibilities as a service clerk or bag boy for Rouses included keeping the internal floors clean, picking up anything that posed a hazard to customers, and inspecting the outside premises. Ex. F [51-6] at 7-8. He verified Rouses' requirement that bag boys or buggy

personnel were responsible for maintaining a clean floor outside, and that he was "not allowed to place anything on the floor." *Id.* at 3-4; Ex. G [51-7] at 6.

B.    Procedural background

Ms. Scott filed a Complaint [1-1] in the Circuit Court of Jackson County, Mississippi, on April 11, 2019, asserting claims against Defendants Rouses and John Does 1-5 for negligence, recklessness, carelessness, or gross negligence. Compl. [1-1] at 4.  The Complaint [1-1] advanced claims for: (1) breach of the duty to keep the premises in a reasonably safe condition; (2) general negligence; and (3) negligent infliction of emotional distress and pain and suffering.  *Id.* at 5-7. According to the Complaint [1-1], Defendants "knew or should have known of the dangerous condition that caused Plaintiff to fall and sustain injuries to her person," and they failed "to warn the Plaintiff of the dangerous condition at the entrance to the store."  *Id.*  She seeks damages for her severe injuries and for "any and all actual, compensatory, and punitive damages."  *Id.*  On August 29, 2019, Defendant Rouses removed the case to this Court, invoking diversity jurisdiction pursuant to 28 U.S.C. § 1332.  Notice of Removal [1] at 1.

Rouses has filed the instant Motion [51] for Summary Judgment or Alternatively, Motion for Partial Summary Judgment as to Punitive Damages, arguing that Ms. Scott "cannot create a prima facie case of negligence under Mississippi's premises liability law."  Mot. [51] at 1.  Ms. Scott has filed a Response [55] in opposition to the Motion [51], asserting that viewing the evidence and drawing all reasonable inferences in her favor, Rouses "created a foreseeable trip

hazard by placing the pallet display on the concrete area between the doors and the curb-cut ramp," and that Rouses had actual and constructive knowledge of the dangerous condition on its premises. Mem. [56] at 8, 13-15. Ms. Scott further avers that Rouses is not entitled to judgment as a matter of law because "material question[s] [sic] of facts exists as to how the bags of firewood came to be on the ground, how long they were there, and who put them there." *Id.* at 19.

In its Reply [60], Rouses contends that it is entitled to summary judgment on grounds that Ms. Scott cannot offer any evidence that Rouses created or had actual or constructive knowledge of a dangerous condition of the bag of firewood on the ground near the entranceway prior to Ms. Scott's injury. Reply [60] at 1.

## II. DISCUSSION

### A. Summary judgment standard

Federal Rule of Civil Procedure 56(a) provides that summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). If the movant carries this burden, to defeat summary judgment "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).

The nonmoving party must show, with "significant probative evidence," that there is a genuine issue of material fact. *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000). "A fact is 'material' if its resolution in favor of one party

might affect the outcome of the lawsuit under governing law." *Sossamon v. Lone Star State of Texas*, 560 F.3d 316, 326 (5th Cir. 2009). "A genuine dispute of material fact means that evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Royal v. CCC & R Tres Arboles, LLC*, 736 F.3d 396, 400 (5th Cir. 2013). Where the nonmovant's evidence is merely colorable, or not significantly probative, summary judgment is appropriate. *Cutting Underwater Techs. USA, Inc. v. Eni U.S. Operating Co.*, 671 F.3d 512, 516 (5th Cir. 2012). In deciding whether summary judgment is appropriate, the Court views all facts and inferences in the light most favorable to the nonmoving party. *Id.*

B.    Premises liability under Mississippi law

Because this case arises under the Court's diversity jurisdiction, the applicable substantive law is that of the forum state, Mississippi. *Erie R. Co. v. Tompkins*, 304 U.S. 64, 70 (1938). Mississippi law is determined by looking to its statutes and the decisions of the Mississippi Supreme Court. *Transcon. Gas Pipe Line Corp. v. Transportation Ins. Co.*, 953 F.2d 985, 988 (5th Cir. 1992).

In Mississippi, "the analysis of premises liability involves three steps." *Titus v. Williams*, 844 So. 2d 459, 467 (Miss. 2003). First, "it is necessary to determine whether the injured person is an invitee, licensee, or trespasser. Next, the duty owed to the injured person must be determined. The final step is the determination of whether the landowner breached that duty." *Massey v. Tingle*, 867 So. 2d 235, 239 (Miss. 2004) (citing *Titus*, 844 So. 2d at 467). To recover damages in a premises liability action, Ms. Scott must show: (a) a duty owed to her by Rouses; (b) a breach

of that duty; (c) damages; and (d) a causal connection between the breach and the damages, such that the breach is the proximate cause of her injuries. *See Double Quick, Inc. v. Moore*, 73 So. 3d 1162, 1166 (Miss. 2011).

"[A] business invitee [is] a person who goes upon the premises of another in answer to the express or implied invitation of the owner or occupant for their mutual advantage." *Corley v. Evans*, 835 So. 2d 30, 37 (Miss. 2003). Rouses concedes that Ms. Scott was a business invitee at the time of her accident. Mem. [52] at 5. A premises owner is not an insurer of an invitee's safety, but it owes to an invitee "a duty of reasonable care, to maintain its premises is [sic] a reasonably safe condition." *Pigg v. Express Hotel Partners, LLC*, 991 So. 2d 1197, 1199 (Miss. 2008). With respect to the duty of care, Rouses concedes that it owed Ms. Scott a "duty to exercise reasonable or ordinary care to keep the premises in a reasonably safe condition." Mem. [52] at 8 (citing *Jones v. James Reeves Contractors, Inc.*, 701 So. 2d 774, 782 (Miss. 1997)). The crux of the dispute in this case is whether Rouses breached its duty of care.

To establish breach of duty of care in a premises liability case, Mississippi case law provides that

> [s]imply put, in order for a plaintiff to recover in a slip-and-fall case, [s]he must (1) show that some negligent act of the defendant caused [her] injury; or (2) show that the defendant had actual knowledge of a dangerous condition and failed to warn the plaintiff; or (3) show that the dangerous condition existed for a sufficient amount of time to impute constructive knowledge to the defendant, in that the defendant should have known of the dangerous condition.

*Anderson v. B. H. Acquisition, Inc.*, 771 So. 2d 914, 918 (Miss. 2000).

C.  Analysis

1.  Whether Rouses breached its duty of care

Rouses maintains that Ms. Scott must establish that it breached its duty of care by offering evidence that: "(1) Rouses created the alleged dangerous condition; (2) Rouses had actual knowledge of the dangerous condition and failed to warn [Ms. Scott]; or (3) the dangerous condition existed for a sufficient period of time to impute Rouses with constructive knowledge of its existence." Mem. [52] at 8 (citing *Grammar v. Dollar*, 911 So. 2d 619, 624 (Miss. Ct. App. 2005)). It contends that, based upon the undisputed record evidence, Ms. Scott is "unable to carry her burden of production." Mem. [52] at 8. Ms. Scott counters that Rouses created a dangerous condition which proximately caused her injury, such that it is not entitled to judgment as a matter of law. Resp. [55] at 1.

a.  Whether Rouses created a dangerous condition

Rouses argues that Ms. Scott cannot offer any direct or circumstantial evidence to support her assertion that Rouses "created the dangerous condition by placing a bag of firewood on the ground[.]" Mem. [52] at 8. Ms. Scott responds that Rouses created a "foreseeable trip hazard by placing the pallet display on the concrete area between the doors and the curb-cut ramp." Mem. [56] at 8.[2]

---

[2] According to Ms. Scott, Rouses "intentionally created a foreseeable and known tripping hazard by placing a pallet of firewood with bags of firewood in a pedestrian walkway." Mem. [56] at 8. Rouses counters that Ms. Scott's argument is based upon a "mode of operation" theory, "which has been repeatedly rejected by Mississippi courts." Mem. [52] at 9. Under the mode of operation theory, "when an owner of a self-service establishment has actual notice that [its] mode of operation creates certain risks of harm to customers, and those risks are foreseeable, it is not necessary for the plaintiff to prove notice of the hazard that caused the injury." *Sullivan v. Skate Zone, Inc.*, 946 So. 2d 828, 832 (Miss. Ct. App. 2007) (citations omitted). Rouses correctly notes that Mississippi courts have expressly rejected the mode of operation theory. *See, e.g., Byrne v. Wal-Mart Stores, Inc.*, 877

Ms. Scott theorizes that "[t]here are two possible reasons for the firewood being on the concrete: either the produce team placed it there or a customer placed it there." Mem. [56] at 12. As to her first theory, to show that Rouses created a dangerous condition under Mississippi law, "the plaintiff [must] demonstrate that the dangerous condition was the result of an affirmative act of the proprietor." *Lindsey v. Sears Roebuck & Co.*, 16 F.3d 616, 618 (5th Cir. 1994) (citing *Sears, Roebuck & Co. v. Tisdale*, 185 So. 2d 916, 917 (Miss. 1966)). "[M]erely proving the occurrence of an accident within the business premises is insufficient to prove liability; rather, the plaintiff must demonstrate that the operator of the business was negligent." *Lindsey*, 16 F.3d at 618. Proof of a dangerous condition at "the time of the accident must be shown," *Ringo v. Wilson*, 204 So. 3d 827, 829 (Miss. Ct. App. 2016), and a plaintiff cannot "rely on the mere fact that the accident occurred in order to show the existence of a dangerous condition," *Green v. Highland Health Club, Inc.*, No. CIV.A. 5:06-CV-152DC, 2008 WL 113855, at *3 (S.D. Miss. Jan. 9, 2008).

Ms. Scott cites to *Munford, Inc. v. Fleming*, 597 So. 2d 1282 (Miss. 1992), and argues that, as in *Munford*, the dangerous condition here could be traced to the negligent manner in which Rouses displayed the bags of firewood at its entrance. *Munford, Inc. v. Fleming*, 597 So. 2d 1282, 1284 (Miss. 1992); Mem. [56] at 9. In *Munford*, the plaintiff slipped in a puddle of water as she was walking through the

---

So. 2d 462, 466 (Miss. Ct. App. 2003); *Sullivan*, 946 So. 2d at 832; *Hearn v. Square Prop. Invs., Inc.*, 297 So. 3d 292, 298 (Miss. Ct. App. 2020), *reh'g denied* (June 30, 2020). To the extent Ms. Scott may be attempting to rely on a mode of operation theory related to the placement of the pallet of firewood to support a finding that Rouses created a dangerous condition, such an argument is unavailing.

defendant's store, and an employee of the defendant testified that she had adjusted the water bottles on the shelf prior to the accident. *Id.* at 1284. The Mississippi Supreme Court held that, although the evidence was insufficient to show that the store had actual or constructive knowledge of the existence of the water, based on the employee's admissions there was sufficient circumstantial evidence presented to permit a reasonable jury to conclude that a leak in the bottle was caused by the defendant's employee's handling of the bottle, such that the defendant negligently created the dangerous condition. *Id.* at 1285-86.

Unlike *Munford*, Ms. Scott has produced no direct or circumstantial evidence to show that the bag of firewood, which was outside of the firewood display, was the result of any affirmative act by Rouses or any of its employees. Ms. Scott testified that when she tried to enter the store, she fell over a bag of firewood lying on the ground, that she saw the bag on the ground, and that she did not know how the bag came to be there. Ex. D [51-4] at 2. Rouses' employees confirmed that they too did not know how the bag of firewood came to be on the ground or how long it had been there, and that it was against Rouses' policies to place any items on the ground. Ex. F [51-6] at 7.

It is true that a premises liability action "may be proven even by circumstantial evidence, that is evidence of a fact, or a set of facts, from which the existence of another fact may reasonably be inferred." *Hardy By & Through Hardy v. K Mart Corp.*, 669 So. 2d 34, 38 (Miss. 1996). However, the "circumstantial evidence must be such that it creates a legitimate inference that places it beyond

conjecture." *Id.* Although Ms. Scott suggests that a Rouses' employee's actions could have caused the bag of firewood to fall on the ground at the entranceway, based upon Ms. Scott's own testimony as well as that of Rouses' employees, this amounts to pure speculation and is insufficient to show that the dangerous condition was attributable to an affirmative act or omission of Rouses or its employees. *See, e.g., Bearb v. Wal-Mart Louisiana Liab. Corp.*, 534 F. App'x 264, 265 (5th Cir. 2013) (affirming summary judgment where the only evidence that the defendant had a dangerous condition on its premises was "speculation and [plaintiffs'] own unsubstantiated statements"); *Peterson v. Brookshire Grocery Co.*, 751 F. App'x 533, 537 (5th Cir. 2018) (noting that a customer's reliance on "mere speculation or suggestion" was insufficient to defeat summary judgment). This is insufficient to defeat summary judgment.

Ms. Scott's next theory is that Rouses created a dangerous condition by "stag[ing] a firewood display in a pedestrian walkway, creat[ing] a dangerous condition or tripping hazard." Mem. [56] at 15. The issue here is not whether the firewood display itself created a dangerous condition, but whether the bag of firewood lying on the ground outside of the display was a dangerous condition caused by an affirmative act of Rouses or its employees. It is undisputed that Ms. Scott fell over the bag of firewood on the ground outside of the display, not over the pallet or the display itself. Ex. [55-6] at 5; *see also* Ex. K - Customer Claim Report [55-13] at 1; Ex. C [51-3] at 20. Mr. Parton testified that it was against Rouses' policy to place items on the ground near its displays, and that he had never seen

any employee set up the firewood display to place items on the ground around the dump bin. Ex. F [51-6] at 7.

The record evidence demonstrates that neither Ms. Scott nor any of Rouses' employees knew how the bag of firewood came to be on the ground, and the record is devoid of evidence that could reasonably suggest that the bag of firewood fell out of the display due to the negligence of a Rouses' employee, or that Ms. Scott's injury was a result of an affirmative act by Rouses. *See Rod v. Home Depot USA, Inc.*, 931 So. 2d 692, 695 (Miss. Ct. App. 2006) (patron failed to show that her injury from slip and fall resulted from an affirmative act of negligence by the store). In sum, there is insufficient direct or circumstantial evidence from which a reasonable jury could infer that Rouses created a dangerous condition on its premises.[3]

Finally, Ms. Scott argues that Rouses created the dangerous condition because, "[d]espite this knowledge of the foreseeable dangers posed by debris or hazards on the floor, . . . Rouses has no similar policy for the inspection of the exterior walkways where merchandise is displayed." Mem. [56] at 18. Here too, Ms. Scott is essentially advancing a mode of operation theory, which has already been rejected by the Court.

Rouses' Floor Care Program requires its employees to conduct floor care "in one hour intervals every day," and to inspect the interior floors of store on the half hour of every hour. Ex. M [55-15] at 2. Mr. Pritchett testified that although Rouses has no formal inspection program for external floor areas, it trained lot attendants

---

[3] Again, to the extent Ms. Scott may be relying on a mode of operation theory, this has been rejected by Mississippi courts. *See Sullivan*, 946 So. 2d at 832 (collecting cases).

and buggy personnel to continually inspect the exterior of the store. Ex. N [55-16] at 1-2. Similarly, Mr. Parton verified that his duties as a bag boy included keeping the floors clean of debris and inspecting the outside premises, and that it was against Rouses' policies to place "anything on the floor." Ex. F [51-6] at 7. Mr. Beeson testified that, although he was aware of one incident where a customer "had slipped over the curb and busted her teeth," he was unaware of any previous incident where a customer had tripped or fallen over bags of firewood. *See* Ex. G [51-7] at 5.

Ms. Scott has pointed to no evidence to suggest that Rouses could have reasonably anticipated or had knowledge that trip-and-falls might occur from bags of firewood lying on the ground outside of the display, and there is no evidence that there had been previous trip-and-fall accidents due to bags of firewood on the ground. *See Bonner v. Imperial Palace of Miss., LLC*, 117 So. 3d 678, 686 (Miss. Ct. App. 2013) (affirming summary judgment where premises owner "took reasonable precautions to prevent patrons from slipping" and there was no evidence that the plaintiff or employees "knew how the grape and/or liquid came to be on the floor").

Based on the record evidence, the Court finds that Ms. Scott has failed to carry her burden to raise a genuine issue of material fact that Rouses created a dangerous condition on its premises.

b. <u>Whether Rouses had actual knowledge of a dangerous condition</u>

Rouses contends that it "did not have actual notice of the bag of firewood lying on the ground near the store entrance prior to [Ms. Scott's] fall." Mem. [52] at

11. Ms. Scott counters that Rouses had actual knowledge because the evidence shows that it "maintained the dangerous condition even after it was provided with notice, through Ms. Scott's trip and fall." Mem. [56] at 14.

Even if it did not create a dangerous condition, liability can still attach if the premises owner had actual notice of a dangerous condition. *See Clark v. Moore Mem'l United Methodist Church*, 538 So. 2d 760, 761 (Miss. 1989) (reversing summary judgment where owner was informed of previous slips). An owner or occupant can only be liable for dangerous conditions which he "knows of or should know of in the exercise of reasonable care." *Vu v. Clayton*, 765 So. 2d 1253, 1255 (Miss. 2000)). Summary judgment in favor of premises owners is appropriate when "[t]here was no proof that [the defendant] had actual or constructive knowledge of the allegedly dangerous condition." *Id.*

Ms. Scott testified that as she was about to enter the store, the "wood was on the floor," and that "[she] don't know whether [Rouses'] buggy knocked it over or what, but [her] feet got caught in a bag of wood." Ex. D [51-4] at 2. Mr. Beeson testified that he attempted to locate witnesses and surveillance videos of Ms. Scott's accident, but was unable to do so. Ex. [55-5] at 3. Mr. Parton confirmed that Rouses' employees were not allowed to "place anything on the floor." Ex. F [51-6] at 7. All of the Rouses' employees who testified stated that they did not have any actual knowledge of how the bag of firewood came to be on the ground or how long it had been there prior to the incident. The record further demonstrates that no Rouses personnel were present at the time of the accident. Likewise, no record

evidence reveals any prior falls, other incidents, or complaints attributable to bags of firewood on the ground at the entranceway, and Ms. Scott has not presented any evidence to establish that any employee of Rouses had actual knowledge that the bag of firewood was on the ground near the entrance before she was injured. *See Tisdale*, 185 So. 2d at 918 (affirming summary judgment on grounds that there was "no actual notice to the defendant of the presence of this particular gum ball on the floor"); *Vivians v. Baptist Healthplex*, 234 So. 3d 304, 310 (Miss. 2017) (Dickinson, P.J., specially concurring) (affirming summary judgment where plaintiff failed to present evidence of a dangerous condition or proof of similar incidents occurring on the ramp where plaintiff had fallen).

Viewing the facts and drawing all reasonable inferences in favor of Ms. Scott as the nonmoving party, she has not presented any evidence to demonstrate that Rouses had actual knowledge of the bag of firewood.

c.      Whether Rouses had constructive knowledge of a dangerous condition

Rouses next asserts that it did not have constructive knowledge of the presence of the bag of firewood because Ms. Scott is unable to offer any evidence tending to show how long the bag of firewood had been on the ground. Ms. Scott counters that the bag of firewood was a recurring dangerous condition of which Rouses had constructive knowledge. Mem. [56] at 14.

A plaintiff may prove her case by showing that a defendant had constructive knowledge of a dangerous condition "by proof that the condition existed for such a length of time that, in the exercise of reasonable care, the proprietor should have

known of the condition." *See, e.g., Munford,* 597 So. 2d at 1284; *Almond v. Flying J Gas Co.*, 957 So. 2d 437, 439 (Miss. Ct. App. 2007) (stating that "the plaintiff must produce admissible evidence as to the time period . . . to establish the operator's constructive knowledge. The plaintiff must present specific proof as to the relevant actual length of time"); *Dickens v. Wal-Mart Stores, Inc.*, 841 F. Supp. 768, 771 (S.D. Miss. 1994) (holding that plaintiff must present evidence to show how long the dangerous condition existed in order to establish defendant's constructive knowledge of it).

Rouses cites *Jones v. Imperial Palace of Mississippi, LLC*, 147 So. 3d 318 (Miss. 2014), in which the plaintiff was injured while walking through the casino's parking garage, and tripped over a concrete parking bumper. *Jones*, 147 So. 3d at 319. The plaintiff alleged that the parking bumper was misaligned, jutted into the pathway, and proximately caused his fall and injury. *Id.* A casino employee testified that he had reported to his superiors that, generally, the parking bumpers sometimes became misaligned. *Id.* at 321. The court found that this testimony was not specific to the particular parking bumper and there was no testimony as to how long the particular bumper had been out of place. *Id.* It held that a "premises owner's duty to keep the premises reasonably safe include[s] a duty to conduct reasonable inspections," however "[t]here is no liability . . . for harm resulting from conditions from which no unreasonable risk was to be anticipated, or those which the [owner] did not know and could not have discovered with reasonable care." *Id.* at 321-22. The court reasoned that even if the defendant had failed to conduct

reasonable inspections, there was simply no evidence to conclude that the problem involving the particular bumper over which the plaintiff fell had existed for "such a duration that the jury may reasonably conclude that due care would have discovered it." *Id.* at 322. Ms. Scott contends that *Jones* does not support Rouses' position because in this case it created the dangerous condition of "a pallet display in the walkway[.]" Mem. [56] at 14. The Court has already rejected this argument.

As in *Jones*, Ms. Scott has not set forth any evidence that Rouses had constructive knowledge of the presence of the bag of firewood, or that reasonable inspections would have led to the discovery of the bag of firewood. Ms. Scott testified that it was possible that the bag of firewood had been knocked down by one of the ladies who passed by her, stating: "I don't know whether their buggy knocked it over or what, but my feet got caught in a bag of wood." Ex. [55-6] at 5. She points to a photograph of the display to support her position that Rouses had constructive knowledge of the dangerous condition on the theory that the "display was maintained in the same fashion hours after [her] fall," demonstrating "Rouses' intent to arrange the display as depicted in the photos." Ex. E [55-7]; Ex. I [55-11]. However, Ms. Scott testified that she tripped on a bundle of firewood that had "fallen or been scattered, just outside the entrance to Rouses[,]" and that she had "no specific knowledge of how long the . . . objects were on the ground prior to her fall[.]" Ex. C [51-3] at 20. Mr. Parton confirmed that it was against Rouses' policies to place any items on the floor, and Mr. Beeson verified that he did not see the bag of firewood on the ground before the accident, and that no employee or other

witness informed him that they had observed the bag of firewood prior to Ms. Scott's injury. *See* Ex. F [51-6] at 7.

Ms. Scott has submitted no evidence tending to demonstrate how long the particular bag of firewood had been on the ground near the dump bin prior to her fall, nor has she provided any evidence to show how Rouses should have known of its presence. There is no evidence that any other customer had fallen over bags of firewood in the entranceway, that Rouses had received prior complaints about bags of firewood on the ground, or that the bag of firewood at issue had been on the ground for a sufficient length of time for Rouses to have discovered it through reasonable inspection. Indeed, given what evidence has been presented, the condition "could have been created . . . only minutes prior to the injury." *Jones*, 147 So. 3d at 322.

There is simply no evidence in the record to conclude that the bag of firewood had been on the ground for "such a duration that the jury may reasonably conclude that due care would have discovered it." *Id.*; *see Walker v. Cellular S. Inc.*, 309 So. 3d 16, 26 (Miss. Ct. App. 2020) (finding that the premises owner had no constructive knowledge because all three employees testified that there were no prior complaints and "they had never seen an incident at the store where a chair had slipped causing a customer to fall"); *Haggard v. Wal-Mart Stores, Inc.*, 75 So. 3d 1120, 1124 (Miss. Ct. App. 2011) (finding that there was no evidence that the store or its employees caused customer's fall or had actual or constructive knowledge of the hazard).

Drawing all reasonable inferences in her favor, a reasonable jury could not conclude that Ms. Scott has submitted sufficient evidence to show that Rouses had constructive knowledge of the bag of firewood that allegedly caused her injury. Based on the foregoing, Rouses is entitled to summary judgment on Ms. Scott's premises liability claim.

2.     Breach of duty of care under a general negligence theory

Ms. Scott also advances a general negligence claim against Rouses, arguing that its floor care policies fell below the standard of care because it failed to inspect the exterior walkways.  *See* Mem. [56] at 18-19; Compl. [1-1].  Rouses responds that Ms. Scott's criticisms of Rouses' floor care policies and procedures are baseless and that she "offers no proof of industry standards or similar authorities requiring Rouses to employ a different inspection procedure for its stores."  Reply [60] at 11.

To the extent Mississippi law would permit Ms. Scott to maintain a separate negligence claim apart from her premises liability claim, to support a general negligence action a plaintiff must prove by a preponderance of the evidence: (1) duty; (2) breach; (3) causation; and (4) injury. *Gulledge v. Shaw*, 880 So. 2d 288, 292-93 (Miss. 2004).  The duty in the majority of negligence cases is to exercise ordinary care.  *Donald v. Amoco Prod. Co.,* 735 So. 2d 161, 175 (Miss. 1999).  The standard of reasonable or ordinary care operates absent a specific rule imposing a higher standard of care or recognizing a mitigated duty.  *Id.*  The standard of ordinary care applicable in cases of alleged negligent conduct "is whether the party charged with negligence acted as a reasonable and prudent person would have

under the same or similar circumstances." *Knapp v. Stanford*, 392 So. 2d 196, 199 (Miss. 1980).

Ms. Scott maintains that the firewood display was given "less attention or consideration than the merchandise inside the store[,]" and she points to Mr. Beeson's deposition testimony, in which he noted that "[t]he bag boys are not trained on anything . . . ." Mem. [56] at 18. However, Mr. Beeson also testified that he was not the only manager who trained employees, and that he could not comment on what training other employees may have received from other members of management. Ex. G [55-5] at 7-8. Mr. Pritchett unequivocally testified that on-the-job training was provided to the buggy personnel to monitor external areas, Ex. E [51-5] at 4, and Mr. Parton confirmed that as a service clerk he had received on-the-job training, Ex. F [51-6] at 3, 5-8. Ms. Scott has presented no evidence tending to show how such on-the-job training was inadequate, nor has she presented evidence of any specific additional training that Rouses' employees should have received that would have prevented her injury. Ms. Scott has offered no evidence tending to show that a different inspection policy or procedure would have led Rouses to discover the bag of firewood on the ground prior to her fall.

Drawing all reasonable inferences in favor of Ms. Scott as the nonmoving party, she cannot establish that Rouses breached its duty of care on a general negligence theory. Rouses is entitled to summary judgment on any such claim.[4]

---

[4] Because Ms. Scott concedes that she "cannot factually support a claim for gross negligence or punitive damages," Mem. [56] at 19, the Court need not address these claims, and Rouses is entitled to summary judgment on all remaining claims.

### III. CONCLUSION

To the extent the Court has not specifically addressed any of the parties' arguments, it has considered them and determined that they would not alter the result.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that, Defendant Rouses Enterprises, LLC's Motion [51] for Summary Judgment or Alternatively, Motion for Partial Summary Judgment as to Punitive Damages is **GRANTED**, and Plaintiff Pearl Scott's claims against Defendants Rouses Enterprises, LLC and John Does 1-5, are **DISMISSED WITH PREJUDICE**. A separate final judgment will be entered pursuant to Federal Rule of Civil Procedure 58.

**SO ORDERED AND ADJUDGED**, this the 28th day of June, 2021.

*s/ Halil Suleyman Ozerden*
HALIL SULEYMAN OZERDEN
UNITED STATES DISTRICT JUDGE